**In the Interest of J.W., a Child.**

**No. 05–03–01582–CV.**

Court of Appeals of Texas, Dallas.

Dec. 2, 2004.

Rehearing Overruled Jan. 13, 2005.

---

Jimmy L. Verner, Jr., Verner & Brumley, Dallas, for Appellant.

David Cole, Dallas, for Appellee.

Before Justices O'NEILL, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG.

Harry Smith appeals the trial court's judgment, following a jury trial, terminating the parental rights to his daughter, J.W. In seven issues, Smith argues that the evidence was legally and factually insufficient to support the trial court's judgment. Because we conclude that (1) Smith engaged in conduct that endangered the child's physical or emotional well-being, and (2) termination is in the child's best interest, we resolve these issues against Smith and affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2000, Smith was convicted of attempting to smuggle cocaine and sentenced to thirty months in federal boot camp. Before he was to surrender into custody in May 2000, Smith began a sexual relationship with Deanna Wyrick. Smith and Wyrick expressly desired to conceive a child, and, although unaware of the pregnancy until September or October 2000, Wyrick did become pregnant by Smith. During their relationship, Smith knew that Wyrick was using drugs, and, on more than one occasion, drove Wyrick to the necessary places for her to obtain drugs. Wyrick, who continued to use drugs during the balance of the pregnancy, gave birth to J.W. in December 2000.

In 2001, Child Protective Services removed J.W. from Wyrick's custody. Seven weeks later, J.W. was placed in the home of appellees, Benjamin and Lara Olsson. Smith did not learn of his daughter's birth until he received a letter from the Olssons in August 2002, along with the Olssons' petition for termination. Smith responded, in his original answer, by requesting possession of J.W.

The Olssons provided Smith access to the child, without a court order, from September to December 2002. Following a temporary hearing in January 2003, the trial court ordered access for Smith twice

each week. The Olssons moved to Arkansas in June 2003.

At trial, evidence was presented that Smith had been a supplier of illegal drugs to numerous drug houses. Smith testified that he "had friends and associates who sold drugs, and would go with them when they sold drugs." However, Smith testified that, since his release from federal boot camp in 2000, he left his former lifestyle behind. Also, he presented witnesses to testify to his present good character.

In May 2003, Smith married Jan Murphy. Murphy was accused at trial of being an alcoholic. Murphy's daughter and granddaughter testified regarding Murphy's alcoholism and tendency to be physically violent. In particular, Murphy's daughter, Sherry Spillman, testified regarding one episode in which Murphy, during a heated argument, held a gun to the head of her former husband.

At the conclusion of trial, the jury found, by clear and convincing evidence, at least one of the enumerated requirements for terminating the parent-child relationship under family code section 161.001(1), and, under family code section 161.001(2), termination was in J.W.'s best interest.

## II. STANDARD OF REVIEW

■ Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam.Code Ann. § 161.206(a) (Vernon 2002); *In re J.F.C.*, 96 S.W.3d 256 (Tex.2002). The clear and convincing standard creates a higher burden to fulfill because of the severity and permanency of terminating the parent-child relationship. *In re J.N.R.*, 982 S.W.2d 137, 141 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Accordingly, an appellate court must also have a higher standard when reviewing the legal and factual sufficiency of the evidence. *In re J.F.C.*, 96 S.W.3d at 264–65; *In re C.H.*, 89 S.W.3d 17, 26 (Tex.2002).

■ In reviewing the legal sufficiency of the evidence to support a termination finding, this court looks at all the evidence, in the light most favorable to the finding, to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. In doing so, we presume that the factfinder settled disputed facts in favor of the finding if a reasonable factfinder could do so. *Id.* As a corollary, we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*

■ When reviewing the factual sufficiency of the evidence supporting a termination finding, we inquire as to whether all the evidence, both in support of and contrary to the trial court's finding, is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d at 27–29. Further, we consider whether the disputed evidence is such that a reasonable factfinder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## III. TERMINATING THE PARENT–CHILD RELATIONSHIP

Section 161.001 of the Texas Family Code permits a court to order termination of parental rights if two elements are established. Tex. Fam.Code Ann. § 161.001 (Vernon 2002). First, the parent must have engaged in *any one* of the acts or omissions itemized in the first subsection

of the statute. *Id.* § 161.001(1); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex.App.-Dallas 1995, no writ.). Second, termination of the parent-child relationship must be in the best interest of the child. Tex. Fam.Code Ann. § 161.001(2); *In re J.R.K.*, 104 S.W.3d 341, 342 (Tex.App.-Dallas 2003, no pet.).

### A. Endangerment

In Smith's fifth issue, he claims that there was no evidence or, in the alternative, insufficient evidence to support the jury's finding that he engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. *See* Tex. Fam.Code Ann. § 161.001(1)(E). Subsection (E)'s provisions are different in several respects from the other enumerated acts in section 161.001(1). Under subsection (E), the court may terminate the parent-child relationship if it finds, by clear and convincing evidence, that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *Id.*

The parent need not know of the child's existence in order to support a finding under subsection (E). *Clark v. Clark*, 705 S.W.2d 218, 219 (Tex.App.-Dallas 1985, writ dism'd); *see also In re M.D.S.*, 1 S.W.3d 190, 198 (Tex.App.-Amarillo 1999, no pet.) (finding that section 161.001(1)(E) "requires only that the parent's conduct endanger the child."). To constitute endangerment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Rather, it is sufficient that the child is exposed to loss or injury. *Id.*

Subsection (E) requires us to look at the parent's conduct alone, including actions or omissions. *In re D.J.*, 100 S.W.3d 658, 662 (Tex.App.-Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 801, 811 (Tex.App.-Fort Worth 2001, no pet.). It is inconsequential that the parent's conduct occurred before the child's birth. *In re U.P.*, 105 S.W.3d 222, 229 (Tex.App.-Houston [14th Dist.] 2003, pet. filed); *In re D.M.*, 58 S.W.3d at 812. Instead, we look to the parent's conduct both before and after the child's birth to determine whether termination is appropriate. *In re D.M.*, 58 S.W.3d at 812. Further, termination under subsection (E) must be based on more than a single act or omission. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent, that endangers the child's physical and emotional well-being, is required. *Dir. of Dallas County Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 733–34 (Tex.App.-Dallas 1992, no writ.); *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

Imprisonment, standing alone, does not constitute "engaging in conduct which endangers the physical or emotional well-being of the child." It is, however, a fact properly considered on the issue of endangerment. *Boyd*, 727 S.W.2d at 533–34; *In re D.T.*, 34 S.W.3d at 635–36. The petitioner need not show that imprisonment was a result of a course of conduct that endangered the child. Rather, it must only be shown that imprisonment was a part of a course of conduct endangering the child. *In re D.M.*, 58 S.W.3d at 812. Thus, if the evidence, including imprisonment, proves a course of conduct that has the effect of endangering the child's physical or emotional well-being, a finding under subsection (E) is supportable. *Boyd*, 727 S.W.2d at 533–34.

### 1. Legal Sufficiency Analysis

The undisputed evidence shows that Smith, before his relationship with Wyrick, was involved with a group of people who used and dealt cocaine. During this time, Smith was convicted of attempting to smuggle cocaine and sentenced to thirty months in federal boot camp. Knowing he was soon going to be surrendering to federal authorities, Smith began a sexual relationship with Wyrick in which the two of them expressly desired to conceive a child.

Wyrick testified that, at the time they were attempting to conceive, Smith knew of her past drug use and her active cocaine use. Also, she testified that while they intentionally attempted to conceive, Smith was not personally using cocaine, but supplied her with cocaine. It is undisputed that, during their relationship, Smith took her to numerous places to buy drugs.

The evidence is undisputed that Smith did go to federal boot camp. Thereafter, Wyrick continued to use cocaine for the first six to seven months of the pregnancy. Child Protective Services became involved when Wyrick admitted using cocaine during the pregnancy. When Wyrick continued to use drugs after the pregnancy, J.W. was put in a foster home and later placed with the Olssons.

Smith contends that, toward the end of their relationship, Wyrick told him that she had a heavy menstrual period lasting approximately ten days, which he assumed to be a miscarriage. Accordingly, Smith contends that he was not attempting to conceive a child after the heavy period, and that only after this apparent miscarriage did he actually take her to various places to buy drugs. Nonetheless, Wyrick became pregnant. Additionally, the jury was presented with Wyrick's testimony in which she flatly denied ever telling Smith that she had a heavy menstrual period. Also, she testified that given her physical condition, such a menstrual period would have been impossible.[1]

Other than the conflicting evidence as to Wyrick's menstrual period, the evidence outlined above is not disputed. We do not deem the conflicting evidence as to whether or not Wyrick had a menstrual period to bear on the issue of the otherwise undisputed evidence of Smith's conduct. Accordingly, when the evidence is viewed in the light most favorable to the trial court's judgment, it is legally sufficient to support a finding under subsection (E) of the statute. *See Bowling,* 833 S.W.2d at 733–34; *see also In re W.J.H.* 111 S.W.3d 707, 717–18 (Tex.App.-Fort Worth 2003, pet. denied).

### 2. Factual Sufficiency Analysis

In our factual sufficiency review, we must ascertain what disputed evidence, if any, exists as to the conduct in question. The only possibly relevant disputed fact is whether Wyrick had a heavy menstrual period that could have signified a miscarriage. As previously discussed, Smith argues that Wyrick told him that she had a heavy menstrual period, which he believed to be a miscarriage. However, Wyrick denies ever having such a menstrual period.[2]

Given this conflicting testimony, this Court will not substitute our judgment for that of the jury's. *Golden Eagle Archery, Inc., v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003) ("[T]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony."). We do not deem Smith's argument on the disputed

---

1. Wyrick testified that, "I don't even know where [he is] coming up with this."

2. See supra note 1.

menstrual period to be significant to the issue of endangerment. The jury heard all the evidence as to Smith's drug involvement and criminal conviction, his active attempt to conceive a child with a woman he knew to be actively engaged in cocaine use, and his facilitation of Wyrick's cocaine acquisition.

Viewing all the evidence in a neutral light, both in favor of and contrary to the trial court's judgment, we conclude that there is factually sufficient evidence to support the jury's finding that Smith engaged in a course of conduct endangering J.W.'s physical and emotional well-being. *See Bowling*, 833 S.W.2d at 733–34; *see also In re W.J.H.* 111 S.W.3d at 707. Accordingly, we decide against Smith on his fifth issue.

Because we conclude that the evidence is both legally and factually sufficient to support the jury's findings under subsection (E), and a finding as to any one of the acts or omissions enumerated in section 161.001(1) is sufficient to support termination, we need not address Smith's other five issues regarding any of the alternative acts or omissions enumerated in section 161.001(1). *See* Tex. Fam.Code Ann. § 161.001(2); *Dupree*, 907 S.W.2d at 86. However, we must address Smith's seventh issue, as to whether termination is in J.W.'s best interest. *Dupree*, 907 S.W.2d at 86.

### B. Best Interest of the Child

■■■■ In his seventh issue, Smith contends that the evidence is legally and factually insufficient to support the jury's finding that terminating the parent-child relationship is in J.W.'s best interest. In conducting our examination of the sufficiency of the evidence to support the jury's finding that termination is in the child's best interest, we are mindful that there is a strong presumption that the child's best interest is served by keeping custody in the natural parent. Tex. Fam.Code Ann. § 161.001(2); *In re J.R.K.*, 104 S.W.3d at 342; *In re K.C.M.*, 4 S.W.3d 392, 393–95 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 676 (Tex. App.-Fort Worth 1984, writ ref'd n.r.e.). However, the factfinder may consider a number of factors in determining the best interest of the child: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the person seeking custody; (5) programs available to assist those persons in promoting the best interest of the child; (6) plans for the child by those individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

■■■■ The absence of evidence about some of these considerations will not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.* Importantly, termination should not be used to merely reallocate a child to better and more prosperous parents. *In re W.E.C.*, 110 S.W.3d 231, 240 (Tex.App.-Fort Worth 2003, no pet.).

### 1. Legal Sufficiency Analysis

In our legal sufficiency review, we are required to look at all the evidence, in the light most favorable to the jury's finding. Smith claims we should recognize that,

since being released from boot camp, Smith abandoned his former lifestyle. He is no longer involved with drugs, has become a real estate agent, and has remarried. However, we note that less favorable to Smith is the evidence which demonstrates that his new wife, Murphy, may pose a risk to J.W. The jury heard the testimony of Murphy's daughter, Sherry Spillman, as well as Murphy's granddaughter, Casey Spillman, both of whom attested to Murphy's ongoing alcohol abuse and her tendency to be physically violent. Sherry Spillman testified that, on one occasion, Murphy held a gun to her former husband's head. Also, Sherry Spillman said that on numerous occasions, Murphy has had physical altercations with her and her siblings.

Additional facts, not directly related to Smith's conduct, must be considered. At trial, two separate psychologists testified as to the possible effects of removing J.W. from the Olssons and placing her with Smith. One psychologist, Dr. Odis, testified that Smith had "excessive self focus," and that his tendency to view things too much from his own perspective could create some difficulties with respect to his parenting. Additionally, although conceding that Smith would not be any kind of danger to J.W., Dr. Odis expressed concern about Smith's ability to provide a stable, secure and safe home for J.W. Another psychologist, Dr. Bontempo, testified that disrupting J.W.'s current placement would be "very, very devastating." More specifically, Dr. Bontempo testified that J.W. is securely attached to the Olssons, and removing her from that environment would have significant physical and emotional consequences. Dr. Bontempo gave her opinion that, given her already vulnerable state, the child should not be removed from the Olssons.

Also, the Olssons testified at trial. Ben Olsson recently graduated from medical school and accepted a residency at Arkansas Children's Hospital. Lara majored in child development and family studies, and is the assistant director of a child care center in Little Rock, Arkansas. Neither Ben nor Lara Olsson have any drug, alcohol, or criminal history. A pre-adoptive screening, conducted by a licensed professional, concluded that not only was J.W. very bonded to the Olssons, but also that there was no reason to doubt the Olssons' parenting ability.

We conclude that the evidence, viewed in the light most favorable to the jury's finding, is legally sufficient to support the jury's finding that terminating the parent-child relationship is in J.W.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266.

### 2. Factual Sufficiency Analysis

In our factual sufficiency inquiry, we look at all the evidence, both in support of and contrary to the finding, to see if the jury "could reasonably form a firm belief or conviction" that terminating Smith's parental rights is in J.W.'s best interest. Smith asks us to consider that he testified Murphy is no longer an alcoholic. He contends that Sherry Spillman's testimony about Murphy is biased because of failed business dealings between the two of them. Smith points to lay witness testimony of the good character of both him and Murphy. This testimony came from friends and business associates, stating that Smith would not do anything to endanger his child, and that he is an honest person.

█ It is not for this Court to evaluate the credibility of the witnesses. Weighing the credibility of the witnesses is within the sole province of the jury. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Accordingly, we cannot agree with Smith that

the evidence was such that the jury would be unreasonable in believing the evidence in favor of terminating the parent-child relationship. We conclude that the evidence is factually sufficient to support the jury's finding that terminating the parent-child relationship is in J.W.'s best interest. *In re C.H.*, 89 S.W.3d at 27–29. Smith's seventh issue is decided against him.

## CONCLUSION

For the reasons set out above, we conclude that the evidence would allow a reasonable jury to form a firm belief or conviction that Smith (a) engaged in conduct that endangered J.W.'s physical or emotional well-being, and that (b) termination of the parent-child relationship was in J.W.'s best interest. The evidence is legally and factually sufficient. Having resolved these two issues against Smith, we need not address his other five issues. The trial court's judgment is affirmed.