TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-11-00565-CV




Albert Paul Rios, Appellant


v.


Texas Department of Family and Protective Services, Appellee




FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 241388-B, HONORABLE RICK MORRIS, JUDGE PRESIDING



M E M O R A N D U M O P I N I O N


 Following a bench trial, the trial court terminated Albert Paul Rios's parental
rights to his four daughters. On appeal, Rios challenges the legal and factual sufficiency of the
evidence to support the trial court's findings that grounds exist to terminate his parental rights
and that termination of his parental rights is in the children's best interests. See Tex. Fam. Code
Ann. § 161.001(1)(D), (1)(E), (2) (West Supp. 2011). (1) Rios also challenges the constitutionality
of a statute that allowed the judge to question two of his daughters in chambers without notice,
the presence of his attorney, or a transcript. Id. § 153.009 (West 2008). We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 In late October 2008, Rios was incarcerated for violating several terms of his
probation for a 2005 burglary-of-a-habitation conviction. (2) The mother of his four daughters had
been imprisoned earlier in the year on three counts of organized criminal activity involving
burglary of a habitation. Because both parents were incarcerated, they gave temporary custody
of their daughters to Rios's sister. The Texas Department of Family and Protective Services (the
"Department") subsequently became involved and, in February 2009, held a family meeting
regarding care of the children. Although the Department alleges that Rios's sister has a low IQ
and a prior CPS history involving removal of her own children, the Department approved the
placement of the children with Rios's sister based in part on a physician's recommendation that
she could properly parent the children with the assistance of family members and community
resources.

 Approximately one year later, the Department learned that Rios's sister had,
unbeknownst to the parents or the Department, voluntarily relinquished custody of the children
to a foster family. The Department made this discovery when the foster parents reported that
they could not adequately care for the girls because their aunt failed to provide their Medicaid
information and documents necessary to enroll them in school. According to documents on file
with the trial court, which were not admitted at trial, the foster family reported to the Department
that, when they picked 

the children up from their aunt's residence in Tennessee, the children were lice ridden, living in
a filthy trailer, and had "peculiar marks on their bodies." There is also a notation that the girls
reported to someone that they had been abused while in their aunt's care.

 The Department interceded and instituted termination proceedings against Rios
and the children's mother. While the termination proceedings were pending, the children lived
with various foster families, each of whom expressed some desire to adopt the children. The
original foster family decided against adoption, and there were allegations of abuse in the second
foster family. The third foster family, however, who also wanted to adopt the children, was
acceptable to the Department. The Department ruled out several family members as potential
placements for the children, including the mother, who had been released from prison in
September 2010. 

 The case proceeded to a bench trial before an associate judge in July 2011, while
Rios was still incarcerated and awaiting a September 2011 parole hearing. See id. §
201.015(a)(West 2008) (authorizing referral of proceedings to associate judge). Before the trial
commenced, the associate judge interviewed the two eldest children regarding their wishes for
placement. The interview was not recorded, and the parents' attorneys were not present for the
interview because the judge did not give them prior notice. Before evidence was presented at
trial, the judge informed the parties about the interview on two separate occasions but did not
disclose the substance of his conversation with the children, nor was he asked to do so. Rios's
attorney did not object to the interview until shortly after the court began receiving evidence. 
During the course of the trial, it was revealed by the attorney ad litem for the children that the
two girls expressed a desire to remain with the third foster family. At that time, Rios's counsel
again objected to the court's consideration of information received from the girls when they
were interviewed without prior notice to the parents and without their attorneys' participation.

 At trial, the mother admitted that she was unable to provide for the children at
that time, was living in someone else's home, and was not gainfully employed; however, she
testified that her boyfriend was willing to help support the children financially and that the
children could live in the three-bedroom home she shared with him and his parents. Rios
testified that he had completed a number of self-improvement courses--including a parenting
course--while in prison, had job-placement resources through the prison upon his release, and
would be living with relatives. He conceded that it was best for the children to be in alternate
placement while he was in prison, but he had suggested other family members to care for them
in his stead. Although he had a parole hearing scheduled for September 2011, he had been
denied parole on three prior occasions and was not scheduled to complete his sentence until
September 2014.

 After the trial concluded, the associate judge terminated both parents' rights to
their daughters on the grounds that (1) they knowingly allowed the children to remain in
conditions and surroundings that endangered the physical and emotional well-being of the
children, (2) they engaged in conduct that endangered the physical and emotional well-being of
the children, and (3) termination of the parent-child relationship was in the children's best
interests. See id. § 161.001(1)(D), (1)(E), (2) (providing grounds for involuntary termination of
parent-child relationship). The Department was appointed managing conservator for the
children and was authorized to place the children for adoption. The referring judge subsequently
adopted the associate judge's written recommendation as the order of the court. See id. §
201.015(a) (West Supp. 2011) (request for de novo hearing before referring judge must be made
within seven working days after learning substance of associate judge's report).

 Rios filed a combined motion for new trial to present new evidence concerning
his release from prison and a statement of points on appeal, which asserted legal and factual
insufficiency of the evidence to support termination of his parental rights. See Act of May 12,
2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332, repealed by Act of May 5,
2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349 (former Tex. Fam. Code Ann. §
263.405(i)) (requiring "statement of points" to be filed with trial court to preserve issue for
appeal). The trial court held a hearing on the motion, at which Rios was present, having been
released on parole on the same day the referring judge signed the termination order. The motion
for new trial was denied, and this appeal followed.

 On appeal, Rios contends that (1) section 153.009 of the family code, which
authorizes a court to interview a child in chambers, violates his federal and state constitutional
due-process rights, (2) the evidence is legally and factually insufficient to establish grounds for
termination, and (3) the evidence is legally and factually insufficient to establish that termination
of his parental rights is in his children's bests interests. (3)


DISCUSSION


Constitutional Challenge to Family Code Section 153.009

 At the time the trial court signed the termination order on August 16, 2011, the
family code prohibited an appellate court from considering any issue "not specifically presented
to the trial court in a timely filed statement of points on which the party intends to appeal or in a
statement combined with a motion for new trial." Act of May 12, 2005, 79th Leg., R.S., ch. 176,
§ 1, 2005 Tex. Gen. Laws 332, 332 (repealed 2011) (former Tex. Fam. Code Ann. § 263.405(i)). 
Although Rios's counsel twice objected to the trial court's having interviewed the two older
children, this complaint was not stated in Rios's combined motion for new trial and statement of
points. Therefore, in accordance with the plain language of the statute, we may not consider it
on appeal. Rios contends, however, that we should consider the issue in the interests
of justice because the legislature repealed section 263.405(i) for final orders rendered on or after
September 1, 2011. See Act of May 5, 2011, 82d Leg., R.S., ch. 75, §§ 8, 9, 2011 Tex. Gen.
Laws 348, 349 (repealing former Tex. Fam. Code Ann. § 263.405(i)). While the order in this
case was signed shortly before the effective date of the amended statute, Rios points out that his
notice of appeal was not due until after September 1, 2011. The notice-of-appeal date is
irrelevant, however, to whether former section 263.405(i) applies because the amended statute
was expressly made applicable only to a final order rendered on or after the effective date of the
amended statute, which repealed section 263.405(i). Id. § 8. Although we recognize that some
appellate courts have considered issues not raised in a timely filed statement of points, those
cases are distinguishable because they involve appellants who, unlike Rios, were without counsel
or effectively without counsel during the relatively short statutory period in which the statement
of points must be filed. See LeShore v. Texas Dep't of Family & Protective Servs., No. 03-11-00314-CV, 2011 WL 5516912, at *2 n.2 (Tex. App.--Austin Nov. 10, 2011, pet. denied) (mem.
op.) (trial counsel filed two motions to withdraw before final order was issued and did not file
statement of points; however, before deadline for statement of points expired, appellant herself
filed notice of appeal that included evidence-sufficiency grounds raised on appeal, and after
deadline to file statement of points expired, appellate counsel was appointed and filed requisite
statement of points); In re S.K.A., 236 S.W.3d 875, 894 (Tex. App.--Texarkana 2007, pet.
denied) (concluding that barring appellate review of termination proceeding under subsection
263.405(i) for indigent parent not provided with appellate counsel is fundamentally unfair and,
therefore, deeming statement of points timely filed); see also In re J.O.A., 283 S.W.3d 336, 342,
347 (Tex. 2009) (finding subsection 263.405(i) unconstitutional to extent it prevented court from
considering ineffective-assistance-of-counsel and insufficiency-of-evidence claims) (citing In re
M.S., 115 S.W.3d 534, 543-46 (Tex. 2003)); In re D.M., 244 S.W.3d 397, 414-15 (Tex.
App.--Waco 2007, no pet.) (application of 263.405(i) violates due process rights when appellate
counsel is not appointed until after deadline for filing statement of points); cf. In re D.R.L.M., 84
S.W.3d 281, 291 (Tex. App.--Fort Worth 2002, pet. denied) (appellate counsel was not
appointed until 15 days after termination order was signed and statement of points was filed next
day by appellate counsel). In addition, this is not a case in which no statement of points was
filed, nor does it involve an untimely statement of points; rather, a statement of points was
timely filed but was specifically limited to legal and factual sufficiency of the evidence to
support termination. Rios was represented by the same counsel at trial and on appeal, and
counsel was aware of the objections she had previously made concerning the court's interview
with Rios's two older daughters; however, no corresponding complaint was raised in the
statement of points. Unlike the cited cases, this case does not present a scenario in which we are
compelled by the interests of justice to ignore clearly applicable statutory authority. Rios's first
appellate issue is overruled.


Termination of Parental Rights

 To terminate the parent-child relationship, there must be clear and convincing
evidence that the parent committed one or more of the acts specifically set forth in family code
section 161.001(1) and that termination is in the children's best interests. See Tex. Fam. Code
Ann. §§ 161.001, .206(a) (West 2008). Both elements must be established; termination may not
be based solely on the best interest of the child as determined by the trier of fact. Texas Dep't of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Evidence is clear and convincing if it
"will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). Due
process demands this heightened standard because of the fundamental interests at issue. In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).

 In this case, the trial court determined that clear and convincing evidence
established that Rios (1) knowingly allowed the children to remain in conditions or surroundings
that endangered the children's physical or emotional well-being, a violation of section
161.001(1)(D) of the family code, and (2) engaged in conduct that endangered the children's
physical or emotional well-being, a violation of section 161.001(1)(E) of the family code. See
Tex. Fam. Code Ann. § 161.001(1)(D), (1)(E). The trial court also found termination of the
parent-child relationship to be in the children's best interests. Id. § 161.001(2). In his second
appellate issue, Rios challenges the legal and factual sufficiency of the evidence of both the
statutory grounds for termination and the best-interest finding. These grounds were presented to
the trial court in a combined motion for new trial and statement of points and have been
preserved for appellate review. See Tex. R. App. P. 33.1(d) ("In a nonjury case, a complaint
regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on
appeal in the complaining party's brief."); Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1,
2005 Tex. Gen. Laws 332, 332 (repealed 2011) (former Tex. Fam. Code Ann. § 263.405(i)).

 On appeal, we apply a standard of review that reflects the clear-and-convincing
burden of proof. In re J.F.C., 96 S.W.3d at 264-66. In reviewing the legal sufficiency of the
evidence to support a termination finding, we look at all of the evidence in the light most
favorable to the termination finding to determine whether a reasonable trier of fact could have
formed a firm belief or conviction about the truth of the matter on which the Department bears
the burden of proof. In re J.L., 163 S.W.3d 79, 84-85 (Tex. 2005); In re J.F.C., 96 S.W.3d at
265-66. We do not, however, disregard undisputed evidence that does not support the finding. 
In re J.F.C., 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must
give due consideration to evidence that the factfinder could reasonably have found to be clear
and convincing. Id. We must consider the disputed evidence and determine whether a
reasonable factfinder could have reasonably resolved that evidence in favor of the finding. Id. If
the disputed evidence is so significant that a factfinder could not reasonably have formed a firm
belief or conviction, the evidence is factually insufficient. Id. In this case, the facts adduced at
trial are undisputed; therefore, we consider all of the evidence in determining whether there is
legally and factually sufficient evidence to support the termination of Rios's parental rights.


 A. Termination of Parental Rights under Section 161.001(1)(D) and (E)

 As used in the termination-of-parental-rights statute, endangerment means
exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. 
Boyd, 727 S.W.2d at 533. Although an endangerment finding requires more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not
necessary that the parent's conduct be directed at the child or that the child actually suffers
injury. In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009). Rather, it is sufficient if the conduct
endangers the child's emotional well-being. Boyd, 727 S.W.2d at 533.

 While both subsections (D) and (E) of the parental-termination statute focus on
endangerment, they differ regarding the source and proof of endangerment. Subsection (D)
concerns the child's living environment, rather than the conduct of the parent, though parental
conduct is certainly relevant to the child's environment. See, e.g., In re S.M.L., 171 S.W.3d 472,
477 (Tex. App.--Houston [14th Dist.] 2005, no pet.). Inappropriate, abusive, or unlawful
conduct by persons who live in the child's home or with whom the child is compelled to
associate on a regular basis in his home is a part of the "conditions or surroundings" of the
child's home under subsection (D). In re W.S., 899 S.W.2d 772, 776 (Tex. App.--Fort Worth
1995, no writ) (stating that "environment" refers not only to acceptability of living conditions,
but also to parent's conduct in home). The parent's knowledge of the risk is an essential element
for termination under subsection (D). Tex. Fam. Code Ann. § 161.001(1)(D). Termination
under subsection (D) is appropriate when the child's environment creates a potential for danger
of which the parent is aware but disregards, but if the parent is unaware of a potential risk of
endangerment, termination under subsection (D) is not appropriate. In re S.M.L., 171 S.W.3d at
477. Living conditions that are merely "less-than-ideal" do not support a finding under this
section. See Boyd, 727 S.W.2d at 533.

 Under subsection (E), the cause of the endangerment must be the parent's
conduct, and "[a] voluntary, deliberate, and conscious 'course of conduct' by the parent[] that
endangers the child's physical and emotional well-being[] is required." In re J.W., 152 S.W.3d
200, 205 (Tex. App.--Dallas 2004, pet. denied); see also In re A.S., 261 S.W.3d 76, 83 (Tex.
App.--Houston [14th Dist.] 2008, pet. denied). In reviewing an endangerment finding under
subsection (E), we look to the parent's conduct both before and after the child's birth to
determine whether termination is appropriate and consider both the parent's actions and failures
to act. In re J.O.A., 283 S.W.3d at 345; In re A.S., 261 S.W.3d at 83; In re J.W., 152 S.W.3d at
205. "'As a general rule, conduct that subjects a child to a life of uncertainty and instability
endangers the physical and emotional well-being of a child.'" In re J.O.A., 283 S.W.3d at 345-46 n.4 (quoting In re R.W., 129 S.W.3d 732, 739 (Tex. App.--Fort Worth 2004, pet. denied)).

 Imprisonment is a factor to be considered by the trial court on the issue of
endangerment. Boyd, 727 S.W.2d at 533. It has been held, however, that mere imprisonment,
standing alone, will not constitute engaging in conduct that endangers the emotional or physical
well-being of a child. Id. Rather, if the evidence, including the fact of imprisonment, shows a
course of conduct that has the effect of endangering the physical or emotional well-being of the
child, a finding under subsection (E) is supportable. Id. at 533-34. If the parent's imprisonment
reflects a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that
endangers the child. Walker v. Texas Dep't of Family & Protective Servs., 312 S.W.3d 608, 617
(Tex. App.--Houston [1st Dist.] 2009, pet. denied); Avery v. State, 963 S.W.2d 550, 553 (Tex.
App.--Houston [1st Dist.] 1997, no writ). When a parent is incarcerated, they are absent from
the child's daily life and may be unable to provide support; consequently, when a parent
repeatedly commits criminal acts that subject him to the possibility of incarceration, it "can
negatively impact a child's living environment and emotional well-being." In re S.M.L., 171
S.W.3d at 479.

 In this case, Rios was incarcerated on October 30, 2008, following revocation of
probation. The children first came into the Department's care in February 2010, and the
termination hearing was held in July 2011. The Department alleges that Rios repeatedly
engaged in criminal acts that created a risk of incarceration and actually resulted in his
incarceration on three occasions between 2005 and 2008. At the time of removal and at the time
of trial, Rios was still incarcerated for violating the conditions of his probation on the burglary-of-a-habitation conviction, and he was not scheduled to be released from prison until September
2014. (4) Due to Rios's incarceration, the Department alleges, his children were subjected to a life
of uncertainty and instability that may continue into the future, and Rios admitted at trial that he
has been unable or only minimally able to financially support his children while incarcerated. 
As further evidence that Rios engaged in a course of endangering conduct, the Department
contends that Rios's most recent incarceration resulted in his selecting a caregiver--his
sister--who was unable to appropriately parent the children.

 The Department alleges that Rios's sister has an IQ of 70 and prior history with
the Department in which her own children were removed from her custody. However, it is
undisputed that the Department approved placement of the children with Rios's sister based in
part on the recommendation of her physician that she could adequately care for the children. It
is undisputed that she ultimately was unable to do so and that she voluntarily relinquished
custody to third parties, unbeknownst to the children's parents and the Department. Although
the Department alleges that the children lived in deplorable conditions with their aunt and may
have suffered physical abuse in her care, the Department's allegations are based on hearsay
statements of the family who took possession of the children from their aunt, none of which were
admitted at trial. The individuals who made these statements to the Department did not testify at
trial, and the Department introduced no evidence of the actual physical surroundings or
conditions of the children's environment.

 In fact, the record contains no testimony regarding the conditions of any of the
homes in which the children have lived--with or without their parents--and no evidence of
"endangering" living conditions in which Rios knowingly placed or allowed the children to
remain. See Tex. Fam. Code Ann. § 161.001(1)(D). There is neither evidence of Rios's sister's
intellectual abilities nor evidence that he had knowledge of his sister's limited intellectual
capabilities. Even if Rios's sister had an IQ of 70, as alleged, that fact alone is insufficient to
establish that she could not adequately care for the children, especially in this case, where it is
undisputed that the Department approved the placement after it was made and a doctor had
determined that Rios's sister could adequately care for the children. There is also scant evidence
concerning Rios's sister's prior "CPS history." A Department witness merely read into the
record a statement in a report that said Rios's sister's children had been removed and not
returned to her custody. There is no evidence regarding the circumstances of removal or when it
happened, nor is there evidence that Rios was aware of it. Cf. In re D.J., 100 S.W.3d 658, 668-69 (Tex. App.--Dallas 2003, pet. denied) (holding mother's knowledge of father's criminal
history and past drug use legally insufficient to show mother knowingly placed child in
endangering environment because conviction was remote, drug use preceded child's birth, and
father had shown stability in preceding few years). The mother of the children testified that she
was aware that Rios's sister had a "CPS history," the nature of which was unspecified, but there
is nothing in the record to indicate that her knowledge should or must be imputed to Rios. Rios
was present at the trial and testified, but his knowledge regarding his sister's low intellect and
CPS history was not explored and cannot be inferred from any of the evidence admitted at trial. 
Accordingly, there was no evidence that, at the time the children were placed with Rios's sister,
the potential for endangerment was evident to Rios, the Department, or a treating physician. 
Likewise, there is no evidence that Rios acquired the knowledge required under section
161.001(1)(D) during the time his sister cared for the children. Therefore, we conclude that the
evidence is legally insufficient to support the trial court's finding that Rios knowingly allowed
the children to remain in conditions or surroundings that endangered the physical or emotional
well-being of the children. (5) See Tex. Fam. Code Ann. § 161.001(1)(D). Nor can these
circumstances be considered in determining whether Rios engaged in a "course of conduct" that
endangered the children's physical or emotional well-being. Id. § 161.001(1)(E).

 This determination, however, does not end our inquiry. We must now consider
whether the evidence is otherwise sufficient to establish that Rios voluntarily engaged in a
deliberate and conscious course of conduct that endangered his children's physical and
emotional well-being. In re J.W., 152 S.W.3d at 205. To that end, the record shows that Rios
has had a troubled past. In 2005, he was sentenced to seven years' imprisonment for burglary of
a habitation, a second-degree felony. Although the sentence was probated for ten years and Rios
was placed on community supervision, he repeatedly violated the terms of his probation. It is
undisputed that, in a two-year period, he smoked marijuana on three occasions, missed curfew
on two occasions, failed to report to his probation officer on five occasions, left the county
without permission on one occasion, and was found to have received stolen property on one
occasion. He also served approximately nine months in jail from June 2006 to March 2007; the
reason for his incarceration is not specified in the record, but this period of time was credited to
his sentence for the burglary-of-a-habitation conviction. At some point, Rios also became
delinquent $165 on probation fees and $19 on urinalysis fees related to his community
supervision. In May 2008, Rios admitted, he "caught a little--a charge in 2008 . . .
hindering--something like that," but he said the charge was dismissed. In any event, the record
reflects that this charge did not serve as a basis for revoking his probation on the earlier burglary
conviction. At the time of the termination hearing, Rios was incarcerated, having been denied
parole on three prior occasions.

 Rios admitted that, during his periods of incarceration, he was unable or only
minimally able to support his children financially. In addition, there is some evidence in the
record that the children's mother was unable to care for them appropriately during the time
periods he violated probation or was incarcerated from 2006 to 2007. A Department caseworker
testified that the children's mother had a "significant prior CPS history" and that the Department
"staffed" for a removal sometime in 2006 but was thwarted by the mother's temporary relocation
to Louisiana. Thus, when Rios repeatedly violated the terms of his probation knowing that his
community supervision could be revoked, he subjected his children to being left in the care of
their mother, whose ability to care for them adequately was questionable. Conduct that routinely
subjects a child to the probability that the child will be left alone--or left without adequate
care--because a parent is jailed endangers both the physical and emotional well-being of the
child. See Walker, 312 S.W.3d at 617.

 The record shows that, to a degree, Rios had a brief period of stability leading up
to his incarceration for violating the terms of probation. Even considering the favorable
inferences raised by this evidence, however, we hold that the evidence of Rios's prior drug use,
criminal history, and demonstrated inability or unwillingness to comply with the terms of
probation is legally and factually sufficient to support the court's finding the Rios engaged in a
voluntary, deliberate, and conscious course of conduct that endangered his daughters' physical
and emotional well-being.


 B. Best Interests

 In determining a child's best interest, the factfinder may consider a number of
factors, including the desires of the child, the present and future physical and emotional needs of
the child, the present and future emotional and physical danger to the child, the parental abilities
of the person seeking custody, programs available to assist those persons in promoting the
child's best interest, plans for the child by those individuals, the acts or omissions of the parent
that may indicate that the existing parent-child relationship is not appropriate, and any excuse for
the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). The
Department need not prove all nine Holley factors as a "condition precedent" to termination, and
the absence of some factors does not bar the factfinder from finding by clear and convincing
evidence that termination is in a child's best interest. In re C.H., 89 S.W.3d at 27.

 While no one factor is controlling, analysis of a single factor may be adequate in
a particular factual situation to support a finding that termination is in the child's best interest. 
In re J.O.C., 47 S.W.3d 108, 115 (Tex. App.--Waco 2001, no pet.), disapproved of on other
grounds by In re J.F.C., 96 S.W.3d at 267 n.39. The focus of the inquiry is on the child's best
interest, not the parent's best interest, and the need for permanence is of paramount importance
in considering a child's present and future emotional and physical needs. See Dupree v. Texas
Dep't of Protective & Reg. Servs., 907 S.W.2d 81, 86-87 (Tex. App.--Dallas 1995, no writ). 
There is a strong presumption that the child's best interest will be served by preserving the
parent-child relationship. See In re R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). 
Parental rights may not be terminated merely because a child might be better off living
elsewhere. In re D.M., 58 S.W.3d 801, 814 (Tex. App.--Fort Worth 2001, no pet.). However, a
factfinder can consider that the best interest of the child may be served by termination of
parental rights so that adoption may occur rather than the impermanent foster-care arrangement
that would result if termination were not ordered. D.O. v. Texas Dep't. of Human Servs., 851
S.W.2d 351, 358 (Tex. App.--Austin 1993, no writ), disapproved of on other grounds by In re
J.F.C., 96 S.W.3d at 267 n.39.

 The evidence regarding endangerment, discussed above in support of the trial
court's finding under section 161.001(1)(E), is also probative of the best-interest finding. This
evidence shows that Rios committed a significant crime after two of the children had been born,
and while on probation for that crime, he continued to reoffend and repeatedly committed
violations of his probation, which ultimately caused his probation to be revoked. At the time of
trial, he was incarcerated with only a speculative chance at being released before his September
2014 release date. See In re H.R.M., 209 S.W.3d 105, 109 (Tex. 2006) (observing that parole
decisions are inherently speculative). A factfinder may infer that past conduct endangering the
well-being of a child may recur in the future if the child is returned to the parent. In re D.L.N.,
958 S.W.2d 934, 940-41 (Tex. App.--Waco 1997, pet. denied), disapproved of on other grounds
by In re J.F.C., 96 S.W.3d at 267 n.39 and In re C.H., 89 S.W.3d at 26.

 Rios testified that he was young when he became a parent but that he took
parenting and drug-education classes while incarcerated and believes he has learned how to
better himself and how to take better care of his responsibilities. There is no evidence that Rios
used any drugs after 2006, and it is undisputed that he complied with the service plan offered by
the Department, even though he was incarcerated. However, Rios testified that he had no
home--stable or otherwise--and no means of contributing financially to the children's support,
although he was minimally able to provide support during an earlier period of incarceration. In
addition, from the time termination proceedings were instituted through the time of trial, Rios
was unable to identify a suitable placement for the children, and he admitted "that right now at
this moment it's best for them to be in someone else's care" due to his incarceration. Although
he testified that resources were available to assist him in finding employment once he is released
from jail, the factfinder need not have assigned conclusive significance to this testimony, which
is highly speculative at best.

 In contrast, there is evidence that the children currently are healthy and in a stable
and loving home with foster parents who desire to adopt all of the children. While the foster
mother testified that she was also willing to keep the children if parental rights were not
terminated, stability and the need for permanence are of paramount importance in considering a
child's present and future 

emotional and physical needs. See Dupree, 907 S.W.2d at 86-87. Indeed, "[t]he goal of
establishing a stable, permanent home for a child is a compelling state interest." Walker, 312
S.W.3d at 619. A factfinder may consider the consequences of its failure to terminate parental
rights and may consider that the children's best interests may be served by terminating parental
rights so that adoption can occur, rather than subjecting them to the impermanence of a foster-care arrangement. See D.O., 851 S.W.2d at 356.

 Applying the appropriate standards of review, we conclude that a reasonable
factfinder could have formed a firm belief or conviction that grounds existed to terminate Rios's
parental rights to his four daughters and that termination was in their best interests. We therefore
overrule Rios's second appellate issue.


CONCLUSION

 Having overruled both of Rios's appellate issues, we affirm the trial court's
judgment.


 _________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose


Affirmed

Filed: July 11, 2012
1. The statute governing involuntary termination of parental rights was amended effective
September 1, 2011, but the amendments are not material to the issues in this case. We therefore cite
to the current statute for convenience.
2. The probation violations included incidents of failure to report on a total of five occasions
in 2006 and 2007, failure to make curfew on two occasions in 2006, using marijuana in January,
April, and June of 2006, and receiving stolen property in June 2006. In addition, as of January 2009,
the date the amended motion to revoke was filed, Rios was delinquent $165 for probation fees and
$19 for urinalysis fees; the dates of Rios's failure to pay these fees is not specified in the motion to
revoke probation. Rios may also have been arrested in May 2008 for "hindering apprehension." 
It is unclear whether he was ever arrested or formally charged with that crime, but if he was, charges
were not pursued and the court that revoked his probation expressly declined to revoke on that basis.
3. The children's mother did not appeal the order terminating her parental rights and is not
a party to this appeal.
4. Although Rios had a parole hearing date scheduled for September 2011, parole decisions
are inherently speculative. See In re H.R.M., 209 S.W.3d 105, 109 (Tex. 2006) (discussing effect
of evidence of parole possibility in cases terminating rights under section 161.001(1)(Q) of family
code). Although evidence of the availability of parole may be relevant to the issue of when an
incarcerated parent will be released, parole-related evidence does not prevent a factfinder from
forming a firm conviction or belief that the incarcerated parent will remain incarcerated until his
release date. See id.
5. To support some of its allegations in this case, the Department refers to documents filed
in the clerk's record, which include third-party statements regarding the children's living conditions
with their aunt and statements from Department employees that provide further details about Rios's
sister's intellect and the prior "CPS history" of the children's mother and Rios's sister. Although
the trial court took judicial notice of its file, this is not evidence we can consider as part of a legal-sufficiency review. See Barnard v. Barnard, 133 S.W.3d 782, 789 (Tex. App.--Dallas 2005, no
pet.). Rather, "we are limited to considering the material that was before the trial court at the time
that it ruled . . . [and] documents not admitted into evidence are not considered by an appellate
court." Id. (citations omitted). While a court can take judicial notice of its own files and the fact
that a pleading has been filed in a case, a court may not take judicial notice of the truth of allegations
in its records, including affidavits. Guyton v. Monteau, 332 S.W.3d 687, 693 (Tex. App.--Houston
[14th Dist.] 2011, no pet.); Barnard, 133 S.W.3d at 789; Tschirhart v. Tschirhart, 876 S.W.2d 507,
508-09 (Tex. App.--Austin 1994, no writ); see also In re C.A.N.M., No. 02-04-00200-CV, 2005 WL
1356443 (Tex. App.--Fort Worth June 9, 2005, no pet.) (mem. op.). We are not aware of any
applicable exception.

 This is not to say that trial courts can never take judicial notice of facts noted in its files. To
the contrary, rule 201 of the Texas Rules of Evidence specifically allows courts to take notice of
certain adjudicative facts, provided the procedures specified in the rule are followed. See Tex. R.
Evid. 201. In this case, however, the cited facts do not qualify as adjudicative facts that can be
judicially noticed under rule 201. Therefore, the Department was not relieved of its obligation to
bring forth admissible evidence to establish these facts, to the extent they are relevant to the
Department's theory of the case. See Barnard, 133 S.W.3d at 789.