**AFFIRM; and Opinion Filed November 26, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00666-CV

## IN THE INTEREST OF J.J., M.J., PI.P., AND PA.P., CHILDREN

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-16-00916-W**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Boatright

This is an appeal from the termination of the parental rights of M.P. ("Mother") to her four children, J.J., M.J., and twins, Pi.P. and Pa.P. Mother raises seven appellate issues, challenging the trial court's failure to make certain findings required by the Texas Family Code, the sufficiency of the evidence to support the termination of her rights, the effectiveness of her attorney's assistance, and the appointment of the Texas Department of Family and Protective Services (the "Department") as managing conservator of the children. We affirm the trial court's judgment.

## Background

The four children and Mother lived with Mother's parents ("Grandmother," "Grandfather," and "Grandparents"), Mother's brother, and her younger sister. The Texas Department of Family and Protective Services (the "Department") received a referral that Mother and others in the household had been using illegal drugs while caring for the children. The Department began an

investigation and, after both Mother and Grandmother tested positive for methamphetamine, the Department removed the children from the home. In October 2016, the Department was named temporary managing conservator of the children. The Choctaw Tribe intervened in the suit because J.J. and M.J. are "Indian Children" as defined by the Indian Child Welfare Act.

The Department created a Family Service Plan that required Mother to participate in a psychological evaluation, drug treatment services, individual counseling, and parenting classes. In addition, the plan stated that Mother "shall submit to random UA/Hair strand drug/alcohol screenings within 4 hours of the request. Any missed requests for drug tests will be considered as positive results." After a hearing, the trial court issued its Temporary Orders, which specifically ordered Mother to comply with the Department's "original, or any amended, service plan during the pendency of this suit." The Temporary Orders also required Mother to pay the Department support for the children.

Mother completed her initial drug treatment and counseling plans, but she relapsed, and between July and October 2017 she tested positive for methamphetamine three times. In October, she sought an extension of the statutory dismissal deadline for the case in an effort to achieve sobriety and a monitored return of the children. The trial court granted the extension. But from that month forward, Mother refused to submit to drug testing

In April 2018, the parties entered into a Mediated Settlement Agreement ("MSA"). In the MSA, the parties agreed to a placement hearing for the trial court to determine whether placement of the children with Grandparents would be in the children's best interest. If the court approved the placement with Grandparents, then they would become joint managing conservators of the children, and Mother would be appointed a possessory conservator. If the trial court denied placement with Grandparents, then Mother's parental rights would be terminated pursuant to

section l6l.001(b)( l )(O) of the Family Code. The parties agreed that such a termination would be in the best interest of the children.

Following the placement hearing, the court made findings on the record including: Mother had an extensive history of drug use including methamphetamines; following the extension granted Mother, she relapsed and had refused all drug tests since that time; when the children were removed, all the adults in the home—grandparents, parents, and adult uncle—were using methamphetamine while the children were living there; Grandfather recently tested positive for methamphetamine; and "it would be improper, a danger to these kids to place them with the grandparents." The court went on to find that Mother had committed the conduct defined in section 161.001(b)(1)(O) and that termination of the parent-child relationship between Mother and the children was in the best interest of the children. The MSA was incorporated into the court's Order of Termination.

Mother appeals.

**Findings or Dismissal Under Section 263.401**

In her first issue, Mother contends that the trial court failed to make findings showing that its decision to retain the case on its docket after the statutory dismissal date was necessitated by "extraordinary circumstances," as required by section 263.401(b) of the Texas Family Code. Absent such findings, Mother argues, the case must be dismissed. We disagree.

Suits for termination of parental rights are not permitted to linger indefinitely on trial court dockets. A trial court must commence trial in those suits before the first Monday following the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator. TEX. FAM. CODE ANN. § 263.401(a). If trial has not commenced by that date, the trial court may not retain the case on its docket unless it finds that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the

Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). If the court makes those findings, it may grant an extension of up to 180 days. *Id.* In addition, at the time the Department initiated this action, the Family Code provided that:

> A party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences.

Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, sec. 263.402, 1997 Tex. Gen. Laws 2108, 2113–14 (amended 2017) (current version, omitting this provision, at TEX. FAM. CODE ANN. § 263.402).

The parties agree that the dismissal date for this case fell on October 16, 2017, which was the first Monday after the first anniversary of the date the Department was appointed temporary managing conservator of the children. One week before that date, Mother filed a motion for continuance and to extend the dismissal date. She alleged that she had substantially completed her required services and that extraordinary circumstances required the extension. Testimony at trial from Grandmother confirmed that Mother sought the extension at the request of the Choctaw Tribe, which was "considering a monitored return" and wanted Mother to be living in her own place and holding her own job. The trial court granted the extension.

Mother now complains that the trial court granted the extension she sought without making findings of extraordinary circumstances. Our review of the record does not indicate Mother requested such findings or objected to their absence. Nor did she file a timely—or any—motion to dismiss the case when the court did not make the findings. Pursuant to the statute governing this case, Mother has waived the right to object now to the court's failure to dismiss the suit. *Id.* And pursuant to Texas Rule of Civil Procedure 33.1(a)(1), she has waived any complaint about the absence of specific written.

–4–

We overrule Mother's first issue.

## Sufficiency of the Evidence

Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's termination of her parental rights. We apply the clear and convincing evidence standard of proof in parental termination cases, asking whether the proof is such that a reasonable fact finder could have formed a firm belief or conviction about the truth of the allegations. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In our legal sufficiency review, we consider all the evidence in the light most favorable to the finding. *Id.* at 266. We assume that the fact finder resolved disputed evidence in favor of the finding if a reasonable fact finder could do so, and we disregard all contrary evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* In our factual sufficiency review, we consider disputed and conflicting evidence and conclude the evidence is insufficient only if, in light of the entire record, the disputed evidence is so significant that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.*

*Termination Under Family Code Section 161.001(b)(1)(O)*

In Mother's second and third issues she challenges the legal and factual sufficiency of the evidence supporting termination of her parental rights under section 161.001(b)(1)(O). This provision states that a trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Mother argues specifically that no court order required her to re-engage in drug testing with the Department after she had completed her initial service requirements.

The Department argues first that Mother agreed in the MSA to termination under subsection (O) if the trial court denied placement with Grandparents. The MSA is binding on Mother because it provided in boldfaced type and capital letters that it is not subject to revocation, and it was signed by Mother and her attorney. TEX. FAM. CODE ANN. § 153.0071(d). The trial court considered the MSA's condition of placement with Grandparents but rejected that placement, expressing concern for the safety of the children. The trial court then incorporated the MSA into its Order of Termination. We agree with the Department that it is entitled to judgment on the MSA. *Id.* § 153.0071(e).

However, we conclude that the evidence would be sufficient even if Mother had not conditionally agreed to the termination. In addition to completing drug treatment services, Mother's Family Service Plan required her to submit to random drug testing at the request of the Department. And the trial court's Temporary Orders ordered her to comply with the requirements of the service plan "during the pendency of this suit." Thus, Mother remained under a court order to comply with the Department's requests for drug tests throughout the end of 2017 and early 2018, until her rights were terminated following the placement hearing. It is undisputed that she refused to comply with those requests. Thus, whether we consider only the evidence supporting the court's judgment or all the evidence in the record, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Mother failed to comply with the provisions of a court order specifically establishing her obligations to obtain return of the children. *In re J.F.C.*, 96 S.W.3d at 263–64.

Finally, Mother testified that she did not pay any child support to the Department as she was ordered to do by the trial court.

The evidence is legally and factually sufficient to support termination of Mother's parental rights under section 161.001(b)(1)(O) of the Texas Family Code. We overrule Mother's second and third issues.

*Best Interest of the Children*

In her fourth and fifth issues, Mother argues that the evidence was legally and factually insufficient to support the trial court's determination that termination was in her children's best interest. She relies on *In re J.W.*, 152 S.W.3d 200, 207 (Tex. App.—Dallas 2004, pet. denied), which held that there is a strong presumption that a child's best interest is served by keeping custody in the natural parent. In fact, though, Mother's arguments are not in favor of her own custody—they are in favor of placing the children with her parents. She points to their long marriage and their ability to provide for the children financially. But as the Department stresses, she agreed in the MSA that termination would be in the best interest of the children if the trial court denied placement with Grandparents. Because the trial court denied that placement, the Department is entitled to judgment on the basis of the MSA on this ground as well.

Again, the evidence would be sufficient even if Mother had not conditionally agreed that termination was in the children's best interest. The trial court's findings focus on the history of drug use by Mother and her parents. Although all three had been through drug counseling, at the time of the placement hearing Mother was refusing to take drug tests, Grandmother missed a test, and Grandfather failed a test. "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). We conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the children's parental rights was in the children's best interest. *In re J.F.C.*, 96 S.W.3d at 263–64.

The evidence was legally sufficient to support the trial court's finding that placement with Grandparents was not in the children's best interest.

The record contains some conflicting evidence on this issue. Grandfather argued that his positive drug test before the placement hearing was incorrect, but the trial court could disbelieve Grandfather's denial of drug usage. And although Mother and Grandparents testified that placement with Grandparents was in the children's best interest, the Department's caseworker, the children's foster mother, and the children's guardian /attorney ad litem all testified to the contrary. All three of those unrelated witnesses testified it would be in the children's best interest to remain in foster care, and the trial court could have believed their testimony. We conclude that, viewed in light of the entire record, any disputed evidence that a reasonable factfinder could not have resolved in favor of the best-interest finding was not so significant that the factfinder could not reasonably have formed a firm belief or conviction. *Id.* The evidence was factually sufficient to support the trial court's finding.

We overrule Mother's fourth and fifth issues.

### Ineffective Assistance of Counsel

In her sixth issue, Mother contends she received ineffective assistance of counsel in the trial court. Specifically, she argues that inclusion of the MSA provision agreeing to termination under section 161.001(b)(1)(O) shows that her attorney lacked either "a full understanding of the evidence, or lack thereof" or "a full understanding of the evidence required to terminate parental rights pursuant to Section 161.001(b)(1(O))."

Mother had a right to counsel in the trial court. The Texas Supreme Court has held that this right necessarily includes the right to effective assistance of counsel *In re M.S.*, 115 S.W.3d 534, 550 (Tex. 2003). Given the heightened standards employed in reviewing cases involving

termination of parental rights, the Supreme Court has directed use of the criminal standard for ineffective assistance of counsel in these cases:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 545 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Mother's argument in this issue depends entirely upon her contention that the evidence at trial was legally and factually insufficient to support termination of her parental rights. But we have concluded that clear and convincing evidence supported that termination. Accordingly, counsel's purported "lack of understanding" of the legal status of that evidence cannot support Mother's charge of ineffective assistance in this case.

In addition, by signing the provision at issue, Mother's attorney obtained the possibility of placement of her children with Grandmother, which was Mother's desired result. However, given the evidence before the trial court, placement with Grandmother was never a certain outcome. The trial court's decision to the contrary did not render Mother's attorney's assistance deficient or show that in signing the MSA he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.*

We overrule Mother's sixth issue.

**Appointment of the Department as Conservator**

In her seventh issue, Mother challenges the appointment of the Department—rather than Grandmother—as managing conservator of the children. She argues that her mother had submitted negative drug tests "for the majority of the case" and that her father had submitted negative drug tests "with the exception of one test in February 2018." She argues further that unidentified "safeguards" could be put in place to protect the children from Grandfather. She asks us to

conclude that appointment of Grandmother alone or Grandparents together would not significantly impair the children's physical health or emotional development.

If the trial court terminates the parental rights of both parents, as the court did here, it must appoint "a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM. CODE ANN. § 161.207(a). The trial court appointed the Department as managing conservator of all four children in this case. We review this conservatorship determination for an abuse of discretion, reversing only if we determine it was arbitrary or unreasonable. *In Interest of N.T.*, 474 S.W.3d 465, 479 (Tex. App.—Dallas 2015, no pet.). A significant part of the trial court's inquiry at trial was whether Mother's parents had shown themselves to be appropriate conservators for the children. Although there was evidence that Grandmother had maintained sobriety for a significant period of time, the evidence was undisputed that she missed a drug test the December before trial and then cut her hair so short that, she acknowledged, it could affect drug testing results. And the following month, Grandfather failed a drug test. Although both Grandparents denied any continued involvement with drugs at the time of trial, the trial court could reasonably have concluded that the evidence raised a significant risk that Grandparents—alone or together—would not be suitable, competent conservators of the children. We discern no abuse of discretion in the court's appointment of the Department as managing conservators instead of the children's maternal Grandparents.

We overrule Mother's seventh issue.

**Conclusion**

We have overruled each of Mother's issues. We affirm the trial court's judgment.


/Jason Boatright/
JASON BOATRIGHT
JUSTICE


180666F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.J., M.J., PI.P., AND PA.P., CHILDREN

No. 05-18-00666-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-16-00916-W.
Opinion delivered by Justice Boatright.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of November, 2018.