**AFFIRM; and Opinion Filed December 31, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00903-CV

## IN THE INTEREST OF L.E.H. JR. AND A.C.H., CHILDREN

On Appeal from the 256th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DF-17-01358-Z

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Brown

Following a jury trial, Father appeals the termination of his parental rights to his sons LEH

Jr. and ACH. In seven issues, he complains of charge error, challenges the legal and factual

sufficiency of the evidence to support termination of his parental rights, and contends the trial

court abused its discretion in appointing the Department of Family and Protective Services

managing conservator. We affirm.

### BACKGROUND

LEH and ACH were born to Father and Mother in July 2006 and October 2009 respectively.

We have found nothing in the record to indicate Father ever lived with the children. Father has

been in and out of jail or prison four times. The record does not contain complete information

about his crimes or dates of incarceration. Father was thirty-one years old at the time of the trial

in this case. He first went to jail at the age of eighteen. At one point, he was incarcerated for five

years. He was in jail for the second half of 2016. The record is unclear when he was released for

the offense that put him in jail in 2016. After his release, he went back to prison for possession of PCP in April 2018. He was released just days before the instant trial.

In September 2016, the Department received a referral alleging neglectful supervision and drug use by Mother. The children were placed with their maternal aunt to give Mother an opportunity to make some changes so the kids could be returned to her. In November 2016, Mother tested positive for cocaine and marijuana. The Department later learned that the children were back living with Mother. On January 20, 2017, the Department filed a petition for protection of LEH and ACH, for conservatorship, and for termination of Father's and Mother's parental rights. That same day, the trial court signed an order for emergency care and temporary custody appointing the Department as temporary managing conservator of both children.

On February 1, 2017, the trial court signed a temporary order requiring Mother to undergo drug treatment, individual counseling, a psychological evaluation, and random drug testing. The order continued the appointment of the Department as temporary managing conservator.

Father was in jail when the case was referred to the Department, when the Department filed its petition, and at the time of the fourteen-day hearing. He wrote the trial judge a letter requesting an attorney, and the court appointed one for him on February 21, 2017.

At the time of trial in July 2018, LEH was eleven and ACH was eight, and they were in foster care. Three witnesses testified at trial—caseworker Susan Dumas, Father, and Father's aunt. Although Mother did not appear at trial, she was represented by appointed counsel. Mother's rights were also terminated, and she has not appealed.

Dumas testified about Mother's failure to comply with the services ordered by the court and her ongoing drug use. She stated that the fourte-day hearing had to be reset because Mother came to court under the influence of drugs. The Department had regularly requested that Mother submit to drug testing. She usually failed to have the testing done, and when she did undergo

testing, she tested positive. On February 1, 2017, she tested positive for amphetamine, "benzos," marijuana, methamphetamine, hydrocodone, and hydromorphone. On February 8, 2017, Mother tested positive for cocaine and marijuana. In addition, lab reports showed Mother tested positive for methamphetamine, cocaine, and other substances on May 2, 2017, and for cocaine and other substances on November 16, 2017. Mother never submitted to a drug test that showed she was negative for illegal drugs. Dumas testified that Mother's use of illegal drugs endangered the children's physical or emotional well-being. According to Dumas, Mother has not shown that she wanted to make the environmental changes she needed to make to have her children return to her home. Mother had a prior history with the Department. In 2006, the Department investigated Mother for physical abuse against LEH, and there was reason to believe the abuse occurred.

Dumas met Father for the first time about six months after the case started.[1] There were court hearings in February, March, May, August, October, and December of 2017, and in January, March, May, and July of 2018. Of those hearings, Father came to one. He had visited the children on one occasion in that year and a half and has not provided any support for them. Father told Dumas that he and Mother had a romantic relationship that became violent, and that is how he ended up in jail. Father knew that Mother had previously used drugs. According to Dumas, he knowingly allowed the children to remain in "those conditions or surroundings." Dumas testified he had constructively abandoned the children and that termination of his parental rights is in the best interests of the children because had not played any part in their lives other than one visit since he got out of jail.

Dumas testified that once the Department realized Father was out of jail, he was ordered to do services. Dumas did not know the date of the order, and our record does not contain such an

---

[1] It is unclear what date Dumas was referring to as the date "the case started." She did not visit Father in jail, so this indicates Father was released from jail some time in 2017.

order. When Father came to visit his children, he told Dumas he wanted to do what was necessary to get them out of foster care. Dumas told him he needed to get a drug test to make sure he was clean and then she needed to sit down with him to set up some services. Dumas indicated she told Father where to have the testing done. He did not have a drug test. Dumas made an appointment with Father to go over and have him sign a service plan, but Father did not show up for the appointment. Dumas testified the children could not be safely reunified with either parent nor could they be permanently placed with a relative or other suitable person.

The boys had been in their current foster placement for almost nine months at the time of trial. They are bonded with their foster family. Prior to that placement, the boys had been failing in school and having behavior issues. They had not been attending school on a regular basis and had both flunked a grade. Since the foster placement, things had "really turned around." Now both boys are passing school and had done well on the STAR test. LEH had become involved in art activities, and ACH had become involved in sports. Dumas thought it was best for the children to stay in the foster home, and the foster parents had expressed an interest in adopting them.

Father gave LEH a BB gun at a visit at the Department office. It looked like a real gun, and LEH took it to school. His foster father advocated to keep him from getting kicked out of school for the incident.

Father was aware that since January 2017 the children had been in the Department's care. When asked how many times he had gone to visitations since then, Father could not say but said it was more than once. He brought them food and sometimes toys. He gave a gun to LEH, but told him not to take it to school. Father said he could take care of the children; he was trying to get his own business off the ground. Father wanted the kids to live with his aunt. When he came home after being incarcerated for five years, he saw that Mother was on drugs. He and Mother used marijuana together. On cross-examination, Father acknowledged that he was not presently

–4–

stable enough to take care of the kids. He planned to let his aunt take care of them until he could do so. He loves his kids and wants to be involved in their lives. Father stated that for the first half of 2016, before he went to jail, he had a relationship with the boys and knew where they were—at Mother's home. Other than when he was in jail, there was never a time when he went without seeing his boys for more than three or four months. He testified he was not going to get in trouble again.

Shantay Malcolm, the children's paternal great aunt, testified that she, along with her two adult children, would help support Father and the boys if he had possession of them. She was not working, but was starting a job next week. Malcolm had not seen the boys in years. The Department did a home study on Malcolm to see if the children could be placed with her. She was not approved due to her inability to care for the children on the income brought into her home.

Questions 1 and 2 in the jury charge involved Father and LEH, and Questions 7 and 8 involved Father and ACH. In Questions 1 and 7, the jury was asked whether Father had: (1) knowingly placed or allowed the child to remain in conditions and surroundings which endanger the physical or emotional well-being of the child; or (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain return of the child who has been in the temporary managing conservatorship of the Department for nine months as a result of the child's removal under the family code; or (4) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months and (a) the Department has made reasonable efforts to return the child to Father, (b) Father has not regularly visited or maintained significant contact with the child, and (c) Father has demonstrated an inability to provide the child with a safe environment. The jury answered yes to both questions.

The jury also found in its answers to Questions 2 and 8 that it was in the best interest of LEH and ACH to terminate Father's parental rights. Ten jurors agreed on the verdict.

In accordance with the jury's verdict, the trial court rendered judgment terminating Father's parental rights to LEH and ACH. The trial court appointed the Department managing conservator of the children. This appeal followed.

## JURY CHARGE

In his first issue, Father argues the jury charge was defective. He complains of the broad form submission in Questions 1 and 7 of the four family code section 161.001 grounds on which the Department sought to terminate his parental rights. He objected to the charge on this basis, and the trial court overruled the objection.

We review challenges to the jury charge under an abuse of discretion standard. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). In all jury cases, the trial court shall, whenever feasible, submit the cause upon broad form questions. TEX. R. CIV. P. 277. Father acknowledges that the Texas Supreme Court has sanctioned broad form submission in parental termination cases. *See Texas Dep't of Human Servs.*, 802 S.W.2d at 649 (controlling question is whether the parent–child relationship should be terminated, not what specific family code ground or grounds jury relied on to affirmatively answer questions posed). He argues there is no guarantee the required number of jurors agreed on the same ground for termination. But the charge instructed that the same ten jurors must agree on all of the answers and to the entire verdict. Absent contrary evidence, we presume the jury followed the trial court's instructions. *See Fox v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-05-00761-CV, 2006 WL 820947, at *1 (Tex. App.—Austin Mar. 30, 2006, no pet.) (mem. op.). Unless and until the supreme court holds otherwise, we must

overrule these types of complaints.[2] *See id.* The trial court did not abuse its discretion in submitting the issues to the jury in broad form. *See In re K.S.*, 448 S.W.3d 521, 535 (Tex. App.—Tyler 2014, pet. denied) (trial court did not abuse its discretion in submitting parental termination issues in broad form); *In re M.R.J.M.*, 280 S.W.3d 494, 511 (Tex. App.—Fort Worth, no pet.) (same). We overrule Father's first issue.

## SUFFICIENCY OF THE EVIDENCE

### *Statutory Grounds for Termination*

The jury found Father had engaged in conduct proscribed by one or more of subsections (D), (E), (N), and (O) of section 161.001(b)(1) of the family code. In his second through fifth issues, Father challenges the legal and factual sufficiency of the evidence to support termination on each of these grounds.

A trial court may terminate the parent-child relationship if the factfinder finds by clear and convincing evidence that (1) the parent committed one or more of the enumerated acts or omissions justifying termination under section 161.001(b)(1) of the Texas Family Code and (2) termination of parental rights is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(A)–(T), (b)(2); *In re A.C.*, No. 17-0477, 2018 WL 5304691, at *4 (Tex. Oct. 26, 2018). Both elements must be established, and each required finding must be based on clear and convincing evidence. *In re A.C.*, 2018 WL 5304691, at *4. Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

---

[2] Father argues that the opinion of the Waco Court of Appeals in *In re B.L.D.*, 56 S.W.3d 203 (Tex. App.—Waco 2001), *rev'd on other grounds*, 113 S.W.3d 340 (Tex. 2003), is mandatory authority that we must follow. In that case, the court of appeals held that the broad form submission of two grounds for termination violated due process. *Id.* at 218–19. We are not bound by a decision from one of our sister courts of appeals. Further, in *B.L.D.*, the supreme court held that the court of appeals should not have addressed the complaint because the error was not preserved. 113 S.W.3d at 355.

Because termination of parental rights is "complete, final, irrevocable and divests for all time" the natural right existing between parents and their children, the evidence in support of termination must be clear and convincing "before a court may involuntarily terminate a parent's rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982)); *see In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

On appeal, we apply a standard of review that reflects the elevated burden at trial. *In re A.B.*, 437 S.W.3d at 502; *In re A.T.*, 406 S.W.3d 365, 370 (Tex. App.—Dallas 2013, pet. denied). This means both legal and factual sufficiency review of a decree terminating parental rights require a reviewing court to consider all the evidence to determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination are proven. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered. *In re A.C.*, 2018 WL 5304691, at *4. In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *Id.*

Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id.* Evidence is factually insufficient if, in light of the

entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

In his third issue, Father contends the evidence is legally and factually insufficient to prove he engaged in conduct which endangered the physical or emotional well-being of the children under 161.001(b)(1)(E). He argues there is no evidence that he engaged in such conduct.

Both subsections (D) and (E) require proof of endangerment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Endanger" means to expose to loss or injury, or to jeopardize a child's emotional or physical health, but it is not necessary that the conduct be directed at the child or that the child actually suffer an injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The primary distinction between the two subsections is the source of the physical or emotional endangerment to the child. *In re K.J.*, No. 05-18-00624-CV, 2018 WL 5730167, at \*2 (Tex. App.—Dallas Nov. 2, 2018, no pet.) (mem. op.). Subsection (D) addresses the child's surroundings and environment while subsection (E) addresses parental misconduct. *Id.*

Termination under section 161.001(b)(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re K.S.*, No. 05-15-01294-CV, 2016 WL 1613126, at \*14 (Tex. App.—Dallas Apr. 21, 2016, pet. denied) (mem. op.). Neglect can be just as dangerous to the well-being of a child as direct physical abuse. *In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996). The parent's conduct may include a parent's actions both before and after the child has been removed by the Department. *In re K.S.*, 2016 WL 1613126, at \*14. Imprisonment, standing alone, does not constitute engaging in conduct which endangers the physical or emotional well-being of the child. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). It is, however, a fact properly considered on the issue of endangerment. *Id.* If the evidence, including imprisonment, proves a course of conduct that has

the effect of endangering a child's physical or emotional well-being, a finding under subsection (E) is supportable. *Id.*

The record reflects that Father engaged in a pattern of crime and imprisonment that demonstrates a deliberate course of conduct that endangered his children's emotional and physical well-being. Father states that his "incarceration history is not expressly clear." We agree with this statement, but not with Father's argument that this means the evidence of endangerment is insufficient. Regardless of the reasons for his incarceration, Father's continued criminality contributed to the neglectful and unstable environment in which the boys had lived. Father admitted he was aware of Mother's drug use. Yet he continued to engage in crime while his children were left in the care of a Mother using a host of illegal drugs. In addition, there was evidence of Father's use of marijuana and possession of PCP and violence against Mother.

After viewing all the evidence in the light most favorable to the findings that Father engaged in conduct which endangered the children's physical or emotional well-being, and considering undisputed contrary evidence, we conclude that a reasonable factfinder could have made such findings. We further conclude, in light of the entire record, that the evidence is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the truth of these allegations. The evidence is legally and factually sufficient to support the findings that Father engaged in conduct that endangered his children's physical or emotional well-being. We overrule Father's third issue. Based on our disposition of this issue, we need not consider Father's issues that challenge the other statutory grounds for termination.

*Best Interest of the Child*

In his sixth issue, Father challenges the legal and factual sufficiency of the evidence supporting the jury's findings that it was in the best interest of the children to terminate the parent–child relationship. Before terminating a parent's rights, the factfinder also must find that

–10–

terminating the parent's rights is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.V.*, 113 S.W.3d at 362 (noting that primary focus of termination proceeding in trial court and on appeal is protecting best interest of child). While there is a strong presumption that keeping the child with a parent is in the child's best interest, *see* TEX. FAM. CODE ANN. § 153.131(b), the prompt and permanent placement of the child in a safe environment also is presumed to be in the child's best interest. *Id.* § 263.307(a). Section 263.307(b) of the family code lists the factors to consider in determining whether the child's parents are willing and able to provide the child with a safe environment. *See* TEX. FAM. CODE ANN. § 263.307(b)(1)–(13). The statutory best interest factors include, among other things, the child's age and physical and mental vulnerabilities; the magnitude, frequency, and circumstances of the harm to the child; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to effect positive environmental and personal changes; and whether the child's family demonstrates adequate parenting skills. *Id.*

We also look to other non-exclusive factors relevant to the best-interest determination, including the desires of the child; the child's current and future emotional and physical needs; any emotional or physical danger to the child; the parental abilities of the persons seeking custody and their plans for the child; the programs available to assist those persons seeking custody in promoting the best interest of the child; the stability of the home; acts or omissions by a parent tending to show the existing relationship is not a proper one; and any excuse for the acts or omissions of the parent. *In re K.J.*, 2018 WL 5730167, at *5; *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors used for determining best interest of child). A best-interest finding need not be supported by evidence of every *Holley* factor, particularly if there is evidence the parental relationship endangered the child's safety. *In re K.J.*, 2018 WL 5730167, at *5.

As discussed above, Mother had a history of substance abuse and Father was aware of it. In addition, he admitted using marijuana and went to prison for possession of PCP. The evidence showed Father was incarcerated four times in thirteen years—once for five years. There was evidence one conviction was due to violence against Mother. Father's repeated criminal conduct resulted in instability and endangerment for LEH and ACH as they were left in the care of a mother with a drug problem. They did not attend school regularly. After the boys were removed from Mother, they moved around between at least two of Mother's relatives and had two foster families. Their first foster family reported that the boys stole from the neighbors, broke furniture, ruined clothing, and refused to clean up after themselves. Further, during the pendency of the termination proceedings, Father demonstrated that he was unwilling to effect personal changes needed to care for the children. He did not submit to drug testing and did not show up for the meeting to go over the Department's service plan. Based on our review of the record, we conclude the evidence presented at trial and summarized above is legally and factually sufficient to support the jury's findings that termination of Father's parental rights was in best interest of LEH and ACH. We overrule Father's sixth issue.

### APPOINTING THE DEPARTMENT AS MANAGING CONSERVATOR

In his seventh issue, Father contends the evidence is insufficient to support the appointment of the Department as the managing conservator of the children. When both parents' rights are terminated, the trial court must appoint "a suitable, competent adult," the Department, or "a licensed child-placing agency" as managing conservator of the child. TEX. FAM. CODE ANN. § 161.207. Termination of the parent–child relationship divests the parent of all legal rights and duties with respect to the child. *Id.* § 161.206(b). Because we have decided against Father regarding his challenge to the portions of the trial court's judgment terminating his parental rights, Father has been divested of his legal rights and duties respecting the children. As a result, he does

not have standing to challenge the portions of the judgment appointing the Department as managing conservator of the children because any error could not injuriously affect his rights. *In re C.E.C.*, No. 05-17-01482-CV, 2018 WL 3062454, at * 8 (Tex. App.—Dallas June 21, 2018, no pet.) (mem. op.) (citing *In re D.K.W., Jr.*, No. 01-17-00622-CV, 2017 WL 6520439, at *5 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.)). We overrule Father's seventh issue.

We affirm the trial court's judgment.

/Ada Brown/
_____
ADA BROWN
JUSTICE

180903F.P05

–13–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF L.E.H. JR. AND
A.C.H., CHILDREN

No. 05-18-00903-CV

On Appeal from the 256th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-17-01358-Z.
Opinion delivered by Justice Brown,
Justices Bridges and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 31st day of December, 2018.